Petitioner of Colleen v. Michael Mendelson, responding to Petitioner Pellant, arguing on behalf of the Appellant, Attorney Mr. James Moffatt, arguing on behalf of the Appellant, Attorney Mr. Paul Strickland. Good morning, gentlemen. Good morning. The marshal indicated that there was some motion or some intent to submit to the courts a foreign jurisdiction or some foreign case law from someone? Yes, that would be Your Honor, Senator James Meyer. The directions I was given said to have four copies of any out-of-state cases, not to file a motion, but I do have those copies, and the court was kind enough to make an extra copy for Mr. Goodman as well. Okay. So that would be my motion to present them to Your Honor. Which side have any votes? Right. Right, okay, thank you. You can proceed, Mr. Moffatt. May I vote? Yes, you may. Thank you. Thank you very much. Thanks. Thank you, Your Honor. Good morning, Your Honors. Once again, I'm James Meyer, MAH here on behalf of Mr. Michael Mendelson. It's my pleasure to appear before you. Thank you for hearing me. Your Honors, I'd like to go over a couple of factual matters that I think are in the original statement of facts that I wanted to highlight before I get to my argument. Briefly, I believe that this is a case of legal issue, mostly, de novo review, Your Honors, because Diane undisputedly signed five documents during her lifetime, and what was her intent with those documents is strictly a question of law, as I see it, applying the law to the facts which were undisputed. There's no dispute the documents were executed. No dispute they were delivered. No dispute on our part, they were accepted by Michael Mendelson. He took the documents and had possession of all the documents at all relevant times. Well, counsel, how do you contend that the 2005 deed was properly delivered when it was the intent of the decedent that the deed not be effective immediately? I don't believe it was her intent not to have it effective immediately. Well, she gave him, she intended, she maintained control over that house, did she not? She gave him permission to live there. We also have the creation of the 2006 trust. There was no disclosure of the existence of this deed. There was the tax deferral program benefit she got. So, in light of that, how do you say it was her intent that it be effective immediately? Because it was a joint tenancy deed and she did everything a joint tenant had the right to do and had the obligation to do. And all of the factors that the court listed to determine that it wasn't her intent were all cases that were inapplicable because they did not involve joint tenancy deeds, nor did they involve actual delivery. There were also problems with the language and the deeds themselves. How does that make it different that it's a joint tenancy deed? Because in the case of a joint tenancy deed, and especially when it's unequivocal, it's an intent to separate the legal title between two people or more people, and both of whom have all the powers of an owner and all the obligations. All right, but I guess what I don't understand is when it's a joint tenancy deed, how is the delivery aspect of it different than a, quote, regular deed? Well, I say it's not different, but delivery is just a matter of the parties intending to transfer the ownership interest or change the ownership interest at the time that the event happened. And it's our position that that happened here, and that was the intent of the parties, and there was nothing from the other side to contradict that intent because they did act as joint tenants after that, after the deed was delivered and Michael had no obligation to record the deed or to tell anyone. Now, when you say they acted as joint tenants, what do you mean? How did they do that? They jointly possessed the property. They jointly paid the expenses on the property. I thought he paid the mortgage. Well, he did. He contributed to it, yes, but they disputed that. But they jointly did what owners jointly do. Which is what? Which is use the benefit of the property to live there and pay the expenses on it. How about the refi at the bank? She gave the bank no indication that there was anyone else that owned the property other than her. I see that as an event, Your Honor, that doesn't sever the tenancy under the case I cited. I think it's Hines, the Hines case. But a mortgage doesn't sever the tenancy. So, to me, that was a red herring that didn't really affect, especially since it happened after the event of the delivery of the deed anyway. Arguably, things that happened after the deed was actually delivered aren't arguably relevant as to the mental state of Diane in 05 when she tenders the deed to Michael. So you're saying it's not relevant what happened with the subsequent trusts because the property was his? Absolutely. As to the event of delivery. The fact that the deed was not filed and the delivery is in the intent of her at that time, I would assume is what you're saying. Yes. Wouldn't her intent have changed subsequently? Of course. She has the right to change her mind as a living person, but she can't undo properties that she's already disposed of. As a trust or a deed speaks as the death of the testator or the grantor, she can't undo events that took place in 2005 or one year earlier and say that, well, I didn't mean that, and now I'm going to somehow revoke that deed that I've given to my son Michael in 05. Why not? Because a deed speaks as the date it's delivered, and it's an instrument of conveyance. Under property law, it's my position that when a deed is conveyed, if it's validly delivered and accepted, that it's a transfer of the property owner's interests, whatever the grantor was transferring to the grantee. In this case, the grantor transferred to himself and to us a joint grantee, which is totally lawful and totally appropriate, and that's what a joint tenancy deed is. Well, in 2006, at the time she attempted then to place that into the trust, she was certainly well aware that a year before, she had, from your position, conveyed it to her son, right? Presumably. Oh, yeah, absolutely. She was aware of it, certainly. So her actions are inconsistent. I would respectfully disagree with that because it's true because she still had a one-half interest in the property as of 05. So it may be inconsistent with her keeping her one-half interest in 05, but it's not inconsistent with her transferring her remaining one-half interest, which is what the law allows her to do. Well, that's not what the document said was transferring, was it? Well, the 06. No, it didn't recite that her half interest was transferred. The 06 documents. That's correct. The 06 documents reflected a change of mind on her part, but I don't think she did. That's right. But I don't think she has the right in 06 to change her mind with respect to property that she's already disposed of. For example, she sold some property in 05 and said, oh, I forgot about that, but it's mentioned in her trust. Certainly, the beneficiary, the trustman, wouldn't be entitled to possession of something that she's already given away before the event in 06 takes place. So at minimum, the other siblings in your presentation, at minimum, the other siblings would be entitled to her half of the joint tenancy. Well, if Your Honor's finding that the deed was severed, that the tenancy was severed, but if the tenancy was not severed, then Michael is the 100 percent owner of the property. But my final argument, I think, in my briefs was he cannot possibly be less than 50 percent. That just can't be possible, and that's exactly what happened. Even though I have the first deed in time and the last trust, my client is still notable. He has the first deed in time, 50 percent, and he has the last trust, which says 100 percent. You argue that Michael's actual occupancy of the land is the equivalent of a recording of the deed. What authority do you have that supports that? More versus machinery. And what about that case do you think is especially salient on this point? I thought I had three cases, but it's not just one. If I misread those cases, it was certainly an apology on my part, but I think that's what those cases all say. They're old Supreme Court cases, Your Honor, and I believe they're in Section 2 of my brief. It's not just one case, it's two or three that stand for the same proposition, that Illinois is a state that recognizes occupancy as noticed, as between parties. As we know, these parties aren't lenders or qualified purchasers. Right. And I think it's in Section 2, but I can't find the other cases. Well, it's on page 28. Oh, thank you very much. But you think the facts of that Moore case was similar? Yes. Yes, Your Honor. Yes, I do, Judge. But the principle of the law was undisputed, that failure to record does not affect the deed's operation as a conveyance. But Your Honor, specifically speaking about the occupancy issue, which is a... Well, that's all right. Don't take the time out. I apologize. It's in there. Season Comfort v. Borenstein, an interesting case, Your Honor, was cited in my motion for summary judgment. You can't plead one case, prove another. Pleadings without proof are just as defective as proof without pleadings. In this case, we have a case where they were pleading undue influence and the failure to record the deed. There was no allegation whatsoever that it was a testamentary transfer or that it wasn't funded. None of those arguments were made until my closing argument, basically, at trial. The judge said, well, what about the funding of the trust? And I did my best to confront that legal argument, which was never pleaded. The court found that there was not undue influence. What is the standard of review in this court with respect to the issue of undue influence? Well, I think that the court found that there was no undue influence, but you're asking about the standard of review. So, for us, if we were to reverse it, what would the standard be? Well, I would say the next question would be on fact, undue influence, because there are factual matters whether there was undue influence exerted on Diane, as they've alleged. But I believe that the testimony was strong at trial that there was no such evidence. I also think there was false pleadings filed by Ronald in the case, and she's reminded of all sorts of things, that there was no evidence at trial of, you know, putting her name on accounts without her consent, not working at all, sponging off of her, not working at all, telling her things that if she doesn't sign documents, she's never going to see her children again. There was no evidence whatsoever offered on those allegations at trial. With respect to the 2011 trust, now that real property never funded that trust, right? There was no transfer of the property from the 2006 trust. So why wouldn't the property have reverted to the estate? Because that issue wasn't alleged in the pleadings. There was no case law cited by my opponent that this type of a trust has to be funded. The court did not cite any case law in its opinion that a trust has to be funded, because in my post-trial motion, I asked for such relief, and nothing was forthcoming, and I've got four cases, including the lawyer variable, that say that a declaration of trust doesn't have to be funded. This isn't the type of trust where you're separating legal title and honor from the settlor, and there's a land trust, for example, and there's a beneficiary hidden so the public doesn't know. This is just two people, I'm sorry, a settlor, Diane, who wants to create a declaration of trust under Section 17A of the Restatement of Trust, and whereby she wants to be the trustee and she wants to be the beneficiary. And the case law that I've cited clearly says it does not have to be funded. So I don't know why that legal issue is in the mind of the trial judge, which it was during the closing argument, but I did the best I could to address it on my feet during the closing argument, and it wasn't successful. But it's my position that the trust does not have to be funded, and that that is just a fact that it wasn't required for her to do what she wanted to do with the 2011 trust, which the court, Your Honor, found did revoke the 2006 trust. So I was surprised the court did agree with me that there was no undue influence and that the 2011 trust revoked the 2006 trust, but yet... But he found that if it revoked the 2006 trust, but it wasn't funded. That's right. The 2011 trust was not funded. That was his reasoning, that that's why it has to revert to the estate of Diane, which in my view, my position that it was the documents clearly showed her intent that Michael, in many cases, that Michael wished to get the house. That's what the 2011 trust says, and that's what the acquittal agreement says. But yet, even though her intent was clearly expressed in those documents, her intent was frustrated by the ruling of the court because Michael didn't get anything more of the house than any other brother, just a 25 percent interest, which I would say cannot possibly be correct. He's got to have a 50 percent interest, no less. As to the statutory claim, I agree that that was the weakest of my claims, Your Honors. I agree that that was kind of a tough one. The statute coincidentally, curiously, doesn't say what a dependent, what dedication means or what a sufficient dedication is. It just says that if you care for a dependent person, you're entitled to make a claim. And he clearly cared for her, and I think there was clear evidence that she depended on him. But doesn't that, you have to show that he, you know, passed up employment opportunities, he lost lifestyle opportunities, he suffered emotional distress as a result. It doesn't seem to me that he was doing any of those things from the record that I read. Right. Very interesting, Your Honor. But it actually, the statute doesn't say that's required. No, but the case law. Okay. The case law directs us there. Okay. But I also found it interesting, though, that the other factors that definitely didn't make him ineligible were referred to by the court, or none of those which didn't exist. For example, he wasn't allowed to stop working. That's one of the negative factors. That didn't happen. He didn't get anything from Diane as far as physical care. That didn't happen. And there are a number of other factors. She was also, wasn't she getting meals on meals? And wasn't there a Catholic charity social worker helping her? The law's testimony did affect it. My position on that would be that doesn't mean he didn't also provide care. And the statute doesn't say it has to be exclusive. You know what my mother used to say? One mother can take care of six kids, but six kids can't take care of one mother. Or seven. I don't recall being paid for it. Right. But I agree that that was the weakest element of the case. But I also thought that it was interesting, though, the court was even critical of Michael's payment of money into his own account. He said, well, I'm not sure where the money came from. I don't know why he mentioned that. It's Michael's bank account that is in his name, U.S. Bank, and he's paying the mortgage bills. Well, he was paying less than he was paying for rent, wasn't he? A little bit. Yeah. And he had a girlfriend and kids. Right. Right. But the brothers say he didn't pay anything, though. And Ronald says in verified answers to interrogatories, well, he's not paying anything. I paid. I paid. He would say. At one point. And there's numerous other pleadings where he's accusing Michael of things that, you know, just obviously there was no evidence forthcoming in the rule. Oh, sorry. I better wrap up. Okay. I didn't get to many of my points, but thank you for hearing me. The four cases on the funding issue. And you will have an opportunity in rebuttal. So thank you. Honorable Justices. My name is Paul Goodman of the Paul Goodman Associates. I represent the estate of Diane Mendelsohn, Ronald Mendelsohn executor. And we are the appellee hearing. I guess the place to start is at the 2005 deed. When my opponent was talking about the fact that the deed should be good for some reason because it's in, because it was placed into joint tenancy. That's simply not the case. For that deed in full to be valid, it had to be properly delivered. Delivery does not just mean, according to the case law, does not just mean walk over to somebody and hand them a deed. But that's a presumption when that's done, right? That's correct. It can only be overcome by clear and convincing evidence. And we certainly had more than clear and convincing evidence in this case. The clear and convincing evidence in this case really starts with the fact that, obviously, the law is that there has to be an intent to deliver, an intent to deliver the property at the time of that handing over of the deed. That simply wasn't the case. The intent in this case is very clear. You only have to read their, what it says in their trust. She intended that this property, according to them, would be the sole and exclusive property of her son Michael at her death. This is a year later. This is in 2011. Six years later. So for that six years, she intended it only to go to Michael at her death, if you take all their, if you take everything that they say is correct. It's still a testamentary transfer. A testamentary disposition, which doesn't have to confirm to the same requirements as a will? Exactly, Your Honor. So why doesn't this one conform? Well, it doesn't conform because there's no witnesses. There's no affidavit. There's no, the notary does not, does not confirm the signatures of witnesses. It obviously couldn't because there are no witnesses. The deed is not a will. The deed, if they wanted to, if they wanted to deed this at the time, at the time, they had to do that. They had to comply with the Illinois law that says they had to comply with the Illinois statute of wills. They didn't do that. They did not do that. Now, the intent was that the trial court find was clear and convincing was based on a bunch of things. Number one, she applied as the sole owner of the property to have the right to have the state of Illinois pay her real estate taxes. But didn't, wasn't there testimony that the basis for that was that they would get tax benefits due to her senior status? I don't see where that really mattered. Yes, of course that was the reason that they did it. But that she still held herself out as the sole owner of the property. Well, she owned part of it. If you listen to your opponent, at minimum, she owned 50% of it, correct? But if she owned 50% of it, there was testimony at the trial, and the judge, I don't know if this was actually part of his ruling, but the fact that there would only be, the real estate taxes would only be paid if she was the sole owner. Otherwise, they'd have to take into consideration the other joint tenant. Also, and the big thing, Your Honor, is that you, and you mentioned it, is the refinancing. This is 2010 they refinanced. This is way afterwards, five years after. And she's still holding herself out as the sole owner of this property. Well, maybe that's the only way they could have gotten it refinanced. I mean, if he, depending on what his financial situation was. Well, that's probably correct, Your Honor, but she still can't go in and say to a bank, and commit bank fraud saying that there are two owners of this property. At the refinance, she held herself out as the owner of the property. And actually, the 2006 trust is the owner of the property, not a joint tenancy. The fact that this is a joint tenancy is the ultimate bootstrap argument. Where he says that it's a, he says that the property is in joint tenancy. Therefore, it's a joint tenancy. The judge, Judge Hughes, ruled that there is no reason, that this property was never properly put into joint tenancy because of the lack of her intent. At the time of the transfer. Well, there was no requirement that it be recorded, correct? I'm sorry? There was no requirement that it be recorded? No, absolutely not. Okay. So what would she have had to do? She would have had to have, what she would have had to have done is, in the six years that she was still living, she still would have had to act like, act consistently with the fact that she had put it into, that she had transferred it to Michael. She didn't, and she didn't do that. She, for those six years, held herself out as the sole owner of the property. Are there other ways besides the refinance and the application for the state care taxes? Well, certainly. She executed the state claiming documents in 2006, and according to credible testimony of her attorney, Larry McGill at the time, never even knew that there was a 2005 deed. So she went ahead in 2006, put this properly into trust. That clearly shows that she never intended anything to occur in 2005. But isn't what's inherited what she intended at the time she delivered that document to Michael? Yes. Isn't that what is inherited here? Yes. So the time that she transferred that property to Michael in joint tenancy, that was her intent. Then she comes and she takes that joint property and puts it into trust. Now, did she put that, so she put that property into trust. Was it hers at that time to put into trust in 2006? Well, here's the thing. How do you determine what her intent was at the time in 2005? The only way you can determine that intent was by looking at what she did for the next six years. And Judge Fuchs did that and ruled that there was clear evidence, clear evidence, that she never intended at that time to lose control of that property. Now, Judge Fuchs also found that the 2011 trust, that the property wasn't put into the trust properly because it was never transferred, that property was never transferred into the trust. That's correct. Is that necessary? In our law, it's absolutely necessary. What case law do you have that tells me it's absolutely necessary that as a trustee? I don't have case law for that. There is none. There is none. You're right. So what we're talking about is how does a piece of property get transferred? Now, I understand that my opponent has given us the Hegstad case. Hegstad's not the law in Illinois, first of all. It's a law in California, maybe in Kansas, but it's not the law here. If there's no law in Illinois, do we follow out-of-state law? I'm sorry? If there is no law in Illinois, do we follow other states or look to other states for guidance? Well, sometimes you can look for it. I mean, that's up to – obviously, that's different in every case. The attorney of the restatement also speaks to this, doesn't it? Yes, it does. Yes, it does. However, even if this is – even if you do follow the Hegstad case, that doesn't change anything. And here's why. If you look at the plain – Hegstad requires one thing for sure, and that's the intent that the property would belong to the trust. If you look at paragraph 3.4 of the trust itself, it says – it doesn't say that the property should belong to the trust. It just says that Diane could claim the property to her son Michael in joint tenancy, and it was her intent that it become his upon death. It doesn't say that the trust was supposed to own the property. And that's what Hegstad says. It stands for the proposition. You know, we go to the – all these – we do our legal education. The first thing they say when we do it in this area is the thing that attorneys forget to do is to fund the trust. Okay? That's the worst mistake attorneys make is to fund the trust. Hegstad is something that California invented to go beyond that, to say that, okay, you forgot. But afterwards, afterwards, you can come in with a petition to say that, yeah, that the trust should be part of the – that the property should be part of the trust. Number one, this doesn't even say that the property is supposed to be part of the trust. Number two, there's no petition. They didn't file a petition afterwards saying that it should belong to the trust. But why would that section have been in there then? I mean, this section you just read, what other purpose would it serve if it wasn't to make sure that the property was part of the trust? If I took a piece of paper that said I wanted my – I wanted this to be – I want this piece of property to be my son's – at his death, that wouldn't be anything. That's really what this is. It's a piece of paper that – it doesn't say that it should belong to the trust. It says it should belong to Michael. Michael and the trust are two different – they're two different things. What other property did she have that went into the trust? Nothing. So why did she develop the trust? Well, she had bank accounts. She had – she didn't have any real property, if that's what you're talking about. No, I didn't. But she certainly had plenty of property at her death. She had bank accounts. She had furniture and fixtures, which you don't normally put in a trust. She had – she had stock accounts. She had accounts with her other son, Ronald Mendelsohn. None of this stuff was ever put in this trust. The trust is just standing there. And, again, another important thing about Hegstad is Hegstad said – it says that when she made the trust, she would have to be the owner of the property. The court found specifically that the property was owned by the 2006 trust at this time. It wasn't even hers to say put it into the trust. The 2006 trust would have to transfer the property. And, of course, what happened is the one thing about the trust that was correct was that it revoked all the other trusts. So the 2006 trust is now just – in other words, you've got a piece of property that's owned by a nonexistent trust in the state of Illinois according to the statutes. And I'm sorry, I can't – I don't know the exact statutes. But according to that, now her – now it reverts back to her estate. We're the estate. We own the property. That's what Judge Fuchs ruled. It's an absolute proper ruling in this case. But Judge Fuchs gave no case law. He cited no case law to support the ruling that he made. That's correct. He didn't – I'm not sure I understand which part he didn't give the – Well, the revoking – I guess my question is he gave no case law on why it is that the 2011 trust was not funded when the case law in the restatement says that you don't really need to fund the trust. You don't need to fund the trust to make the trust a trust. Correct. True. But you certainly – you do – again, for the reasons that I stated before, that doesn't mean that the trust owns the property. You don't even – You don't have to transfer the property into the trust either according to the restatement. Well, according to the restatement, if the grantee and the grantor are the same person, but he ruled at the time that that wasn't the case, that the case was in 2006, the trust was – the property was owned by the 2006 trust. So if she had to – if she had to transfer – if she transferred the property in 2006 to 2011, would she have had to transfer that as trustee of that 2006 trust? Absolutely. Absolutely. Thank you very much, Your Honors. My excuse. Any further questions? No. Thank you, Counsel. Thank you very much. Mr. Moffitt, why don't we start where we left off with Mr. Goodman. If she transferred this property into the 2006 – from the 2006 trust to the 2011 trust, wouldn't she have had to transfer that as trustee as opposed to as just an ordinary individual? I say no. I say that – that it's still her property and she's still alive, and whatever interest she still has, she can put it in a trust without doing a deed. It's a – it's a – it's a solemnize it somehow. Somehow my opponent got it in his mind that there has to be a solemn event of a deed, even though the restatement clearly says that there is not. And even though there's clearly no Illinois case law that says that that's accurate, even though the judge and my opponent did not cite any case law, even after it was confronted with them in a post-trial motion, no case law. And sorry, you're wrong. It has to be funded – it does not have to be funded. This is a situation where the settlor is the trustee. She can create documents to show her intent without the requirement of a deed, which is not a will. A deed is not a will. The O5 deed did not have to comply with the statute of wills. That's not truthful. That argument wasn't made either in the briefs. I never saw that argument being made. It has been now made right on his feet. He's telling me now that the O5 deed had to comply with the statute of wills. That's not correct. It only had to comply with the Conveyances Act. There's no more statute on deeds. The Illinois Conveyances Act says you only need four things to create a deed. A grantor, grantee, a property description, and a signature of the grantor's name on the deed. That's all you need. He's not correct. You do not need witnesses' affidavits. You do not need to comply with the wills. As Your Honor correctly said, if she doesn't have anything to give, then she can't give anything. If the O5 deed conveyed her interest in Michael and joint tenancy and that joint tenancy was not severed, then she had nothing to give to anyone else. And the documents she signed subsequent to that had no legal effect whatsoever because she is the owner of the property, has the ultimate and indisputable right to do whatever she wants with it. She can disinherit some children. She can give to everything. She can give everything to Michael if she wants, and she can change her mind, which is what she may have done with the O6 documents. She may have changed her mind, but that does not undo what she's given away. She can't bring that back. Had she given it away if it was to take effect upon her death? No, because a deed does not speak on the date of the death. A will does. This is a deed. So a deed speaks on the date of the death. I'm sorry, of the date the transaction took place. And if she has, in fact, correctly signed, delivered, and had a deed accepted, then it's over. She's given away her interest in the property. But she didn't know that. Well, I think she may have known that. There was no evidence to say she didn't. She may have just— But again, we go back to what we were talking about earlier, the fact that she indicated that she herself was the owner when she applied for the loan. I mean, all the factors we mentioned earlier. I don't think she did represent anyone. She was the sole owner. There was evidence that she refinanced and took a loan. In her name. Right. Well, yes, in her name. That's correct. But that doesn't sever the tenancy under the case law. It doesn't sever the tenancy. Well, what sort of a tenancy? A transaction where she conveyed the property outside of the joint tenancy, which did not happen in this case. There was no subsequent deed. So there's no other way to revoke the delivery of this? Well, I think there's a lot of ways to sever a tenancy, Your Honor, but a mortgage is not one of them. And the five factors the court listed in determining that there was no acceptance, none of which had any relevance to her intent, they were listed in page 31 of my brief, Your Honors. The first factor that Judge Kuss regarded as crucial was the deed was not recorded. My opponent over and over again argued throughout the case that a deed has to be recorded. It does not. So he didn't have to record it. So obviously it has nothing to do with delivery. Number two, there's a Droge case that says that. Number two, Diane retained possession and control until her death. Diane on the right has a joint tenancy to retain possession and control over the property. That does not refute her intent. Number three, Diane was granted leave to have the state pay the taxes. That doesn't refute her intent. She had the right. She had that benefit since 1995, Your Honors. She had that tax control benefit since 1995. So how does that somehow affect her thinking in 05, well, maybe I'm not really conveying the property to Michael. He's going to keep this tax benefit. That just makes no sense. Well, while none of these individually may be sufficient, are they sufficient cumulatively? Well, that would be an argument for Mr. Goodman, but I don't think so. I say no, Judge, because none of these are really convincing. And also in response to that, my opponent in the court cites like five cases, I think, maybe four. None of those facts are applicable to the fact pattern here. Hopefully you'll read those cases or you may have time to them, but they all involve equivocal language in the transaction itself. Well, I'll give you this upon my death, or I'll give you this if something else happens. And maybe some of the cases involve no closing of the door at all. Obviously, those facts are not here. And obviously, we say that he was accepted in the case law, does not refute that, does not refute our argument. All right, I think I'm done. Thank you. Thank you. Gentlemen, thank you so much for your brilliant arguments this morning. We will take this case under consideration and render a decision in due course. The court is adjourned for the day. Thank you so much. Safe travels back.